MICHIGAN PANELING MACHINE AND MANUFACTURING COMPANY
v. EUGENE PARSELL.

*Declarations of ownership—Estoppel.*

Declarations as to ownership by a party in possession are to be received in disparagement of title; not in support of it, unless as *res gestæ* to make out an adverse holding.

An agent's possession of chattels cannot empower him to admit away his principal's title, notwithstanding the rule that his declarations within the scope of his agency and in connection with some transaction as agent, are receivable as *res gestæ*.

Special questions to the jury may properly be rejected by the court where answers to them would be inconclusive and not necessarily inconsistent with a general verdict either way.

One who is silent when he ought to speak cannot speak when he ought to be silent.

An agent's casually speaking of a certain machine belonging to the corporation for which he acted, as "my machine," in the hearing of the president of the corporation and in conversation with a person who was not dealing with the property or proposing to do so, and who was not shown to have relied upon any such expression of ownership, did not estop the corporation from afterwards asserting title to the machine in an action of replevin against a sheriff who took it on an execution against the agent.

Levy of execution can never of itself place title in the judgment debtor by estoppel or otherwise.

Error to Genesee.    Submitted Feb. 1.    Decided April 2.

REPLEVIN.    Plaintiff brings error.

*Willard M. Lillibridge* and *Henry M. Cheever* for plaintiff in error.    A principal is not bound by the admissions of his agent unless they relate to the subject matter of the agency and are within the scope of his authority (*Woods v. Banks,* 14 N. H., 101; *Gooch v. Bryant,* 13 Me., 386; *Burnham v. Ellis,* 39 Me., 319; *Batchelder v. Emery,* 20 N. H., 165; *Winter v. Burt,* 31 Ala., 33; *Runk v. Ten Eyck,* 24 N. J. Law, 756; *Fogg v. Child,* 13 Barb., 246), and are made at the time of a transaction within

the range of his powers. *Yocum v. Barnes*, 8 B. Mon.,
496; *Lamb v. Barnard*, 16 Me., 364; *Thomas v. Stern-
heimer*, 29 Md., 268; *Baring v. Clark*, 19 Pick., 220;
*Cooley v. Norton*, 4 Cush., 93; *Brehm v. G. W. R. R.
Co.*, 34 Barb., 256; *Dick v. Lindsay*, 2 Grant's Cas., 431;
*Austin v. Chittenden*, 33 Vt., 553; an agent's admissions
as to his ownership of property in his possession are
not admissible (*Standefer v. Chisholm*, 1 Stew. & P.,
[Ala.] 449) when they do not accompany any authorized
act done for the principal, but are made afterwards and
in his absence, *Turnpike Co. v. Thorp*, 13 Conn., 173;
*Craig v. Gilbreth*, 47 Me., 416; *Austin v. Chittenden*, 33
Vt., 353; *Davis v. Henderson*, 20 Wis., 520; the agent's
authority must be shown by proving his right to make
such admissions, or that the admissions were recognized
by his principal, *Hatch v. Squires*, 11 Mich., 185; in an
action against an officer for levying on property claimed
by plaintiff as his, the debtor's declarations as to the own-
ership are inadmissible unless made in plaintiff's pres-
ence, *Russell v. Clark*, 38 Me., 332; *Turner v. Belden*,
9 Mo., 797. One is not estopped by his acts or declara-
tions unless it appears that they were in the light of
existing circumstances, and that the party making them
meant to deceive or was culpably negligent in not assert-
ing his rights (*Boggs v. Merced*, 14 Cal., 279; *Brown v.
Wheeler*, 17 Conn., 345; *Rangeley v. Spring*, 21 Me., 130;
*Cummings v. Webster*, 43 Me., 192; *Preston v. Mann*, 25
Conn., 118; *Whiteacre v. Culver*, 8 Minn., 133; *Heath
v. Derry Bank*, 44 N. H., 174) and that the party to
whom the admissions were made had changed his course
to his own injury because of them, *Copeland v. Copeland*,
28 Me., 525: *Califf v. Hillhouse*, 3 Minn., 311; *Taylor v.
Zepp*, 14 Mo., 482; *Martin v. Angell*, 7 Barb., 407; *Com.
v. Moltz*, 10 Penn. St., 527; *Eldred v. Hazlett*, 33 Penn.
St., 307; *Shaw v. Beebe*, 35 Vt., 205; *Wooley v. Edson*,
35 Vt., 214; *Hunley v. Hunley*, 15 Ala., 91; *Reeves v.
Matthews*, 17 Ga., 449; *Young v. Foute*, 33 Ill., 43; *Car-
land v. Day*, 4 E. D. Smith, 251; *Catlin v. Grote*, 4 id.,

296; *Burdick v. Michael,* 32 Mich., 246; *Truesdail v. Ward,* 24 Mich., 117; a corporation was not estopped from recovering goods taken on an execution against a third person, by the fact that their agent pointed them out as belonging to the debtor, *N. Y. etc. Co. v. Richmond,* 6 Bosw., 213; verbal admissions as to property in suit, tending to show a sale to the other party, cannot estop one from showing the true nature of his right, *Isaac v. Williams,* 3 Gill, 278; the fact that one has allowed another to use and control property will not estop him from claiming it as his own, though it has been sold as the property of the one to whom it was intrusted, *McDermott v. Barnum,* 16 Mo., 114; an agent's false declaration will not bind the principal, unless by the latter's silence or acquiescence others have been misled, *Green v. Dockendorf,* 13 Minn., 70; silence does not operate an estoppel if there was no duty to speak, *Taylor v. Ely,* 25 Conn., 250.

*Long & Gold* and *Wm. Newton* for defendant in error. Possession of personalty is evidence of ownership, and the declarations of the party in possession are competent evidence, 1 Greenl. Ev., § 34; *Magee v. Scott,* 9 Cush., 150; *Fish v. Skut,* 21 Barb., 333; *Millay v. Butts,* 35 Me., 139; *Linscott v. Trask,* 35 Me., 150; *Jackson v. Bard,* 4 Johns., 234; silence may work an estoppel, *Ford v. Loomis,* 33 Mich., 121; *Sebright v. Moore,* id., 92.

COOLEY, J.   The plaintiffs replevied from the defendant a paneling machine, and the question in controversy related to the ownership of this machine, at the time the suit was brought.   The plaintiff gave evidence of having purchased it of one Rice, through John Warren his agent, and also of having purchased the right to manufacture and use machines of the kind in the counties of Genesee, Saginaw and Bay, under the letters patent which had been issued therefor.   A contract between the plaintiff of the first part and John Warren and Lester Cross of the second part was then proved,

under which Warren and Cross were constituted agents for the plaintiff in the sale of rights to manufacture and use said machine in the counties aforesaid, and were to have the machine delivered to them for the purposes of the agency, and were to re-deliver the same at Detroit when requested. It was then shown that Warren had possession of the machine at Flint, and that from him it passed into the possession of defendant.

The defense was that the machine was the property of Warren, and had been seized by the defendant as sheriff on an attachment issued against Warren in favor of one Roberts. The evidence of Roberts was put in that while Warren was at Flint in possession of the machine, he, Roberts, supposing him to be the owner thereof, trusted him for board to the sum of four hundred dollars and upwards, to recover which the attachment suit was instituted. The defendant then offered to prove by several witnesses that while Warren thus had the machine in possession he represented himself to be the owner thereof. This evidence was objected to, but received by the court, and the witness Roberts and one Howland testified to such representations. There was also some evidence that Warren once spoke of the machine as "his machine" in the presence of Leavitt, the president of the plaintiff, and of Roberts, but Leavitt denied ever hearing such a remark. When the evidence was in, plaintiff requested the court to submit to the jury the following special questions:

1. Did the plaintiff purchase the machine of Rice?

2. Did the plaintiff ever sell the machine to any one, and if so, to whom?

3. Did Warren have the machine in question at Flint, under and by virtue of the contract of the plaintiff with Warren and Rice?

The court declined to submit these questions, and proceeded to instruct the jury among other things that if they should find that Leavitt, the president of the plaintiff, was in Flint and heard Warren say, in the

presence of Roberts, that the machine was his, and kept silent, and said nothing about it, and Warren continued to give Roberts credit, then the plaintiff would be estopped from claiming title in this case as against the attachment of Roberts. The plaintiff's counsel requested the court to limit this instruction to that portion of the credit which accrued after the alleged statement was made, but the court declined to do so. The defendant had a verdict upon which judgment was entered.

I. In support of the admission of Warren's declarations that he was owner of the machine, our attention is directed to those cases in which the declarations of one in possession of land when they are made, are permitted to be proved in a suit to which one who subsequently succeeds to his right is a party. Such cases were considered at some length in the case of *Cook v. Knowles*, ante, p. 316, and we shall not review them here. In general such declarations can only be received in disparagement of the party's title; not in support of it; they may be shown to characterize a possession and thus make out an adverse holding, because for this purpose they would be a part of the *res gestæ*; but they are never received as evidence of title in favor of the party making them. It is true that the declarations of an agent, when acting within the scope of his agency, and when made in connection with some transaction as such, are receivable, as part of the *res gestæ*, but it would be extremely dangerous to hold that the mere possession of chattels by an agent would empower him to admit away the title of his principal. No authority sanctions such a doctrine, and *Turner v. Belden*, 9 Mo., 797 and *Russell v. Clark*, 38 Me., 332, which are cited for the plaintiff are to the contrary.

II. If the application by the court of the doctrine of estoppel to the case had been correct, the submission to the jury of the special questions would have been properly refused. We have several times held that where

the answers to special questions would be inconclusive, and not necessarily inconsistent with a general verdict either way, it would be proper for the court to decline to submit them. *People v. Jones*, 24 Mich., 215; *Fowler v. Hoffman*, 31 Mich., 215; *Harbaugh v. Cicotte*, 33 Mich., 241. Such would have been the case here under the judge's view of the estoppel, because, although the jury might have found that the plaintiff bought the machine and had never disposed of it, they must nevertheless have thought the defendant entitled to recover if they believed the testimony on which the claim of estoppel was based. But we think the view taken by the court of this branch of the case was clearly erroneous.

The general doctrine of estoppel *in pais* is familiar. If one maintain silence when in conscience he ought to speak, the equity of the law will debar him from speaking when in conscience he ought to remain silent. In *Dann v. Cudney*, 13 Mich., 239, the doctrine was applied to a wife who had, without objection, permitted her husband to receive payment for her horse which he had wrongfully disposed of as his own. The sale was an assertion of his ownership, and if she proposed to dispute this, good faith required that she should do so before the purchaser had parted with his money provided she had the opportunity. She did have the opportunity in that case, but failed to embrace it, and the purchaser in reliance upon her silence completed the purchase. But there is no analogous state of facts in this case.

The case here is that Leavitt, the president of the corporation owning the machine, hears Warren, its agent, speak of the machine as his own, and does not interpose and deny the fact. The evidence does not indicate that the remark of Warren was anything more than a casual remark, such as an agent in possession of property might naturally make without any purpose to assert a title in himself. There is nothing strange or unusual in an agent or clerk, intrusted with property to manage or sell, speaking of it as "mine," and the owner if pres-

ent would never think of interposing a correction unless the agent was making or proposing to make some use of the property inconsistent with his duty as agent. He certainly would not be bound in conscience to do so for the benefit of any mere bystander to whom no sale or other disposition of the property was proposed.

In this case Leavitt was not called upon to put Roberts on his guard, because Roberts was not dealing with the property or proposing to do so. The conscience of Leavitt was therefore untouched in the case, and the bad faith of his subsequently asserting title for the corporation is not made out. But neither does it appear that Roberts subsequently acted in reliance upon Warren's ownership. No one testifies that Warren was trusted on the faith of this undisputed allegation or statement that the property was his, nor do we find any action predicated upon it until the levy of execution. It is not claimed that any estoppel could arise from this levy: the mere levy can never put a title in the judgment debtor, by estoppel or otherwise.

The case, it is manifest, is not brought within the principles of the law of estoppel as previously laid down in this court. *Graydon v. Church*, 7 Mich., 36; *Vinton v. Peck*, 14 Mich., 287; *Truesdail v. Ward*, 24 Mich., 117. In support of the views we take of the facts of this case we refer to *Traun v. Keiffer*, 31 Ala., 136; *Bragg v. Boston &c. R. R. Co.*, 9 Allen, 54; *Mc Dermott v. Barnum*, 16 Mo., 114.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.